IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-02392-MSK-KLM

LEVEL 3 COMMUNICATIONS, LLC, a Delaware limited liability company, and
LEVEL 3 TELECOM HOLDINGS, LLC, a Delaware limited liability company,

      Plaintiffs,

v.

BEAVEX INCORPORATED, a Connecticut corporation,

      Defendant.

---

**LEVEL 3'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS UNDER
RULES 12(b)(2) AND 12(b)(3) OR, ALTERNATIVELY, MOTION TO TRANSFER
VENUE UNDER 28 U.S.C. § 1404(a)**

---

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF RELEVANT FACTS ("FACTS") ...................................... 2

    A.    Under the Contract, BeavEx Knowingly Received Significant Services from Level 3 From Colorado ................................................. 3

        1.    Level 3 Provided BeavEx Services Under the Contract at BeavEx's Office Location in Denver ......................................... 4

        2.    For Its Other United States Locations, BeavEx Knowingly Received Contract Support Services from Level 3 in Colorado ................ 5

    B.    BeavEx Had Regular Contact With Colorado in Connection With Payment, Billing, and Credits Under the Contract ................................ 6

    C.    BeavEx Knowingly Communicated With Level 3 in Colorado in the Lead-Up to BeavEx's Improper Termination of the Contract, Which Has Caused Level 3 Financial Harm in Colorado ...................................... 7

    D.    Evidence Relevant to This Dispute is Located in Colorado .................. 8

ARGUMENT ...................................................................................................... 8

I.    BEAVEX IS SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN COLORADO ...................................................................................... 8

    A.    BeavEx Has Sufficient Minimum Contracts with Colorado to Support the Exercise of Specific Jurisdiction ................................ 9

    B.    The Assertion of Specific Personal Jurisdiction over BeavEx Is Consistent with "Traditional Notions of Fair Play and Substantial Justice" ................ 14

II.    VENUE IN THE DISTRICT OF COLORADO IS PROPER UNDER 28 U.S.C. § 1391(b) ....................................................................................... 16

III.    THIS COURT SHOULD NOT TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF GEORGIA ............................................................ 18

    A.    The Location of Witnesses and Other Evidence .................................. 19

    B.    The Cost of Making the Necessary Proof ............................................ 21

C.      The Advantage of Having a Georgia Federal Court Determine Questions
        of Georgia Law ................................................................................................. 21

CONCLUSION ................................................................................................................ 22

# TABLE OF AUTHORITIES

## CASES

*AST Sports Sci., Inc. v. CLF Distrib. Ltd.*,
  514 F.3d 1054 (10th Cir. 2008) .................................................................... 8, 9, 10, 12

*Aurora Commercial Corp. v. Lenox Fin. Mortg. Corp.*,
  No. 13-cv-0323-WJM-MJW, 2013 WL 5200231
  (D. Colo. Sept. 16, 2013) ...................................................................................... 20

*Benton v. Cameco Corp.*,
  375 F.3d 1070 (10th Cir. 2004) ............................................................................ 13

*Burger King Corp. v. Rudzewicz*,
  471 U.S. 462 (1985) ............................................................................... 9, 10, 12, 15

*Cont'l Am. Corp. v. Camera Controls Corp.*,
  692 F.2d 1309 (10th Cir. 1982) ...................................................................... 11, 12

*Creative Socio-Medics, Corp. v. City of Richmond*,
  219 F. Supp. 2d 300 (E.D.N.Y. 2002) ............................................................ 11, 13

*DJRJ, LLC v. U-Swirl, Inc.*,
  No. 16-cv-21-GKF-FHM, 2016 WL 1629288
  (N.D. Okla. Apr. 22, 2016) .................................................................................... 18

*Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*,
  618 F.3d 1153 (10th Cir. 2010) ..................................................................... passim

*Helicopteros Nacionales de Columbia, S.A. v. Hall*,
  466 U.S. 408 (1984) ................................................................................................. 8

*Karl W. Schmidt & Assocs., Inc. v. Action Envtl. Sols., LLC*,
  No. 14-cv-00907-RBJ, 2014 WL 6617095
  (D. Colo. Nov. 21, 2014) ....................................................................................... 18

*Kuberski v. Cred X Debt Recovery, LLC*,
  No. 11-cv-03247-RPM-KLM, 2012 WL 2943726
  (D. Colo. July 2, 2012)............................................................................................ 15

*Mobley v. Legal Helpers Debt Resolution, LLC*,
  No. 11-cv-02497-MSK-KMT, 2012 WL 123255
  (D. Colo. Jan. 17, 2012) ........................................................................ 18, 19, 20, 21

*Nationwide Telecom Inc. v. Dollar Phone Corp.*,
   No. 16-cv-2495-MSK-MJW, 2017 WL 4123938
   (D. Colo. Sept. 18, 2017) ............................................................................ 18, 19

*OMI Holdings, Inc. v. Royal Ins. Co. of Canada*,
   149 F.3d 1086 (10th Cir. 1998) ........................................................................ 15

*Peay v. BellSouth Med. Assistance Plan*,
   205 F.3d 1206 (10th Cir. 2000) ........................................................................ 15

*Pro Axess, Inc. v. Orlux Distrib., Inc.*,
   428 F.3d 1270 (10th Cir. 2005) ................................................................. passim

*ProServe Corp v. STC-Marketing, LLC*,
   No. 06-CV-00097-MSK-CBS, 2006 WL 1517733
   (D. Colo. May 31, 2006) ................................................................................... 19

*Uffner v. La Reunion Francaise, S.A.*,
   244 F.3d 38 (1st Cir. 2001) ............................................................................... 17

*World-Wide Volkswagen Corp. v. Woodson*,
   44 U.S. 286 (1980) ............................................................................................. 9

*Yellow Transp., Inc. v. Apex Dig., Inc.*,
   No. 05-2463-JWL, 2006 WL 416224
   (D. Kan. Feb. 22, 2006) ....................................................................... 10, 11, 13

## STATUTES

28 U.S.C. § 1391 .................................................................................. 2, 16, 17, 18

28 U.S.C. § 1404 ............................................................................................. 1, 18

## RULES

Federal Rules of Civil Procedure 12 ................................................................... 1

Plaintiffs Level 3 Communications, LLC and Level 3 Telecom Holdings, LLC (together, "Level 3") submit this response in opposition to Defendant BeavEx Incorporated's ("BeavEx") Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, in the Alternative, Motion to Transfer Venue to the Northern District of Georgia under 28 U.S.C. § 1404(a) (the "Motion") [ECF No. 19].

## **INTRODUCTION**

BeavEx's contacts with Colorado in connection with its Level 3 contract are more than sufficient to establish specific personal jurisdiction in this breach of contract action.[1] The law of personal jurisdiction is intended to prevent out-of-state defendants from being haled into court on the basis of random, fortuitous, or attenuated contacts with the forum state. BeavEx can claim no such surprise. BeavEx has known since its initial dealings with tw telecom in 2013, and with Level 3 in 2015, that both entities were Colorado companies, and BeavEx's multi-year contract on which Level 3's claim is based has a substantial connection to Colorado. That contract required Level 3 to provide telecommunications services to BeavEx at BeavEx's location in Denver. And for BeavEx's other locations throughout the country—most of them in states other than Georgia—the contract called for Level 3 to provide technical, security, and billing support services from its headquarters in Colorado. The parties' course of dealing under the contract shows that BeavEx knowingly and repeatedly engaged with Colorado. BeavEx communicated with Colorado-based Level 3 personnel regarding various contractual issues and even met with a Level 3-affiliated technician in person at BeavEx's Denver location. BeavEx also sent payments under the contract to Level 3 in Colorado. BeavEx's contacts with Colorado are not, as BeavEx

---

[1] Level 3 does not contend that BeavEx is subject to general jurisdiction in Colorado.

1

argues, the type of trivial, random, or fortuitous contacts that courts routinely disregard for the purposes of specific personal jurisdiction; rather, BeavEx's contacts arise from its purposeful, long-term, and continuous contractual relationship with a Colorado entity, pursuant to a contract that contemplated partial performance in Colorado. These contacts are more than sufficient to put BeavEx on notice that it could be sued in Colorado based on its breach of that contract.

Further, BeavEx does not and cannot present a "compelling case" that exercising specific jurisdiction over it would offend traditional notions of fair play or substantial justice. Litigating in Colorado would not unduly burden BeavEx; Colorado has a strong interest in adjudicating this dispute brought by Level 3, a Colorado resident; the relief Level 3 seeks would be more conveniently obtained here, even if it could also be effectively obtained in Georgia federal court; and this Court's exercise of jurisdiction does not implicate the substantive policies of other jurisdictions.

Venue is also proper under 28 U.S.C. § 1391(b), both because BeavEx is subject to personal jurisdiction in Colorado, and because a substantial part of the events or omissions giving rise to Level 3's claim occurred here. And transfer to Georgia is unwarranted; none of the statutory factors outweigh the significant deference Level 3's choice of forum must be given.

Accordingly, BeavEx's Motion should be denied.

## STATEMENT OF RELEVANT FACTS ("FACTS")

1.      In 2013, BeavEx entered into a telecommunications contract with tw telecom holdings, inc. ("tw telecom"), under which tw telecom provided BeavEx telecommunications services from its corporate headquarters to its main data center in Georgia. The terms and conditions in place with tw telecom specified tw's headquarters in Littleton, Colorado as the

address for any notices from BeavEx to tw under the tw agreement. (Ex. A, Declaration of Ben McTier ("McTier Decl.") ¶ 3, Ex. 1 § 20.)

2.      Thereafter, Level 3's ultimate parent company acquired tw telecom holdings, inc., converted it to a limited liability company, and renamed it Level 3 Telecom Holdings, LLC. (Compl. ¶ 10; McTier Decl. ¶ 4.)

3.      Level 3's principal place of business is in Broomfield, Colorado. (McTier Decl. ¶ 5.)

**A.      Under the Contract, BeavEx Knowingly Received Significant Services from Level 3 From Colorado**

4.      In 2015, BeavEx decided to purchase an expanded scope of services from Level 3, asking Level 3 to create a secure private telecommunications network for BeavEx's United States operations. In 2015 and 2016, BeavEx signed at least five Level 3 customer orders for IP VPN Managed Services (the "Contract"), pursuant to which Level 3 connected more than 26 BeavEx locations throughout the country to BeavEx's secure private network. (Compl. ¶ 11; McTier Decl. ¶ 6.)

5.      BeavEx knew at the time, and at all relevant times, that, although Level 3 provides telecommunications services globally and throughout the United States, with employees in many different locations, Level 3 is a Colorado-based company with a significant number of employees based in Colorado. (McTier Decl. ¶ 7.)

6.      According to Eric Kierstad, BeavEx's Chief Information Officer, when BeavEx began using Level 3's services, BeavEx "fully expected to have a long term relationship" with Level 3. (*Id.* ¶ 8, Ex. 2.)

1.      Level 3 Provided BeavEx Services Under the Contract at
        BeavEx's Office Location in Denver

7.      One of the customer orders BeavEx signed called for Level 3 to provide services

for BeavEx's office located at 12435 E. 42nd Avenue in Denver, Colorado. (*Id.* ¶ 9, Ex. 3 at 2.)

Those services included installing equipment on-site that allowed BeavEx's Denver location to

connect to BeavEx's other locations across the United States over Level 3's network. (*Id.* ¶ 9,

Ex. 3 at 3.)

8.      On July 20, 2015, Tim Stanley, BeavEx's Director of Information Technology,

signed BeavEx's customer order for the services BeavEx asked Level 3 to provide at BeavEx's

Denver location. (*Id.* ¶ 10, Ex. 3 at 7.)

9.      Like all of its customer orders, BeavEx's Denver order called for Level 3 to

service BeavEx's Denver location for three years. (*Id.* ¶ 11, Ex. 3 at 1.)

10.     Matthew Chang and Teddy Matthews, BeavEx information technology personnel,

were identified as BeavEx's local Denver contacts for the installation and activation of Level 3's

services to BeavEx at its Denver location. (Ex. B., Declaration of Bradley Heritage ("Heritage

Decl.") ¶ 4, Ex. 1 at 2.)

11.     On October 14, 2015, Level 3 shipped the router equipment required for Level 3's

services under the Contract to BeavEx's Denver location. (*Id.* ¶ 6, Ex. 2.)

12.     On January 25, 2016, BeavEx caused its representative on-site at its Denver

location to provide Joseph Manalang, a Level 3-affiliated technician, access to the premises to

install the router required for Level 3's services. (*Id.* ¶ 7, Ex. 1 at 5.)

13.     Manalang installed the router but was initially unable to activate it. (*Id.*) He

informed Level 3 of the problem. (*Id.* ¶ 8, Ex. 1 at 7.)

4

14.     The next day, Salvador Alvarez, a Broomfield-based Level 3 technician, scheduled another on-site visit to BeavEx's location for troubleshooting. (*Id.* ¶ 9, Ex. 1 at 10.)

15.     On February 2, 2016, Manalang went back to BeavEx's Denver location. (*Id.* ¶ 10, Ex. 1 at 10.) Bradley Heritage, another Broomfield-based Level 3 technician, worked with Manalang that day to configure and activate the Level 3 router on-site. (*Id.* ¶ 10.) They were successful. (*Id.* ¶ 10, Ex. 1 at 10.)

16.     From the time Level 3 successfully installed, configured, and activated its equipment at BeavEx's Denver location until BeavEx terminated Level 3's services, Level 3 provided BeavEx services at its Denver location. (McTier Decl. ¶ 12.)

2.     <u>For Its Other United States Locations, BeavEx Knowingly Received Contract Support Services from Level 3 in Colorado</u>

17.     Level 3 provides a customer portal as a resource for customers to communicate with Level 3 regarding service issues, including by submitting trouble tickets. (Ex. C., Declaration of Dave Mueller ("Mueller Decl.") ¶ 4.) The servers Level 3 uses for the customer portal are located in the Interlocken Data Center in Broomfield, Colorado. (*Id.* ¶ 4.)

18.     In January of 2016, BeavEx personnel (including Matthew Chang, Tim Stanley, and Shawn Oliver, the BeavEx network engineer who coordinated installing and activating Level 3 service orders) requested that Level 3 provide them training on how to use the portal. (McTier Decl. ¶ 13, Ex. 4.)

19.     On February 11, 2016, Donna Hamilton, a Broomfield, Colorado-based Level 3 portal support center employee, conducted the portal training with BeavEx personnel via telephone conference. (*Id.* ¶ 13.)

20.     In the parties' course of dealing under the Contract, BeavEx personnel regularly communicated with Level 3 personnel based in Colorado regarding service questions, security, and issues. (Mueller Decl. ¶ 7, Ex. 1; McTier Decl. 14, Ex. 5.)

21.     During the life of the parties' contract, 46 BeavEx trouble tickets were closed by Level 3 technicians based in Colorado (roughly 43% of all tickets)[2]. (Mueller Decl. ¶ 6.) Although BeavEx trouble tickets were serviced from other Level 3 locations (such as Tulsa and Phoenix), Level 3's Colorado location serviced the most tickets. (*Id.*)

22.     When BeavEx's trouble tickets required additional review by Level 3, the tickets were escalated to Level 3 managers, most of whom were on duty in Colorado, who communicated directly with BeavEx personnel. (McTier Decl. ¶ 15, Ex. 6.) BeavEx had access to Level 3's escalation matrix, which showed Colorado telephone numbers for the Level 3 managers ((720) area codes). (*Id.*)

### B.     BeavEx Had Regular Contact With Colorado in Connection With Payment, Billing, and Credits Under the Contract

23.     In 2013 and 2014, when tw telecom was providing BeavEx services under the Contract, tw telecom's invoices identified a Colorado address for BeavEx to send payments to. (Ex. D., Declaration of Katherine Johnson ("Johnson Decl.") ¶ 4, Ex. 1.)

24.     In 2015, 2016, and 2017, Level 3's invoices to BeavEx bore Level 3's corporate headquarters' address in Broomfield, Colorado; wire transfer instructions required BeavEx to send payment to a Wells Fargo bank located in Denver, Colorado; and payment by mail

---

[2] A technician who closes a trouble ticket is the technician ultimately responsible for the ticket. Therefore, this percentage likely understates the number of Colorado-based Level 3 technicians who were involved in servicing BeavEx's trouble tickets. Identifying every technician who worked on BeavEx's tickets would be an unduly time-consuming and burdensome exercise.

instructions required BeavEx to mail payments to a Post Office box located in Denver, Colorado. (*Id.* ¶ 6, Ex. 2.)

25.     BeavEx sent required payments to Level 3 in Colorado via check. (*Id.* ¶ 7, Ex. 3.)

26.     When BeavEx was behind on payment, Katherine Johnson of Level 3 sent Jennifer Shipman, Eric Kierstad, and Tim Stanley of BeavEx detailed information regarding how BeavEx could pay its bill—each option called for payment to be made in Colorado. (*Id.* ¶ 8, Ex. 4 at 3.)

27.     Matthew Chang of BeavEx communicated with Level 3 personnel based in Broomfield, Colorado regarding billing and credit issues associated with the Contract. (*Id.* ¶ 9, Ex. 5.)

### C.     BeavEx Knowingly Communicated With Level 3 in Colorado in the Lead-Up to BeavEx's Improper Termination of the Contract, Which Has Caused Level 3 Financial Harm in Colorado

28.     In September of 2016, at BeavEx's request, BeavEx and Level 3 personnel convened a "Get Well" telephone conference to address problems with BeavEx's services. Dave Mueller and Chris Smith, Level 3 personnel based in Broomfield, Colorado, participated in the call on Level 3's behalf. (Mueller Decl. ¶ 8; McTier Decl. ¶ 16.)

29.     On November 8, 2016, BeavEx sent its termination notice to Level 3 in Colorado. (McTier Decl. ¶ 17, Ex. 7.)

30.     BeavEx's termination of the Contract and refusal to pay contractual Early Termination Liability has resulted in significant financial harm to Level 3 in Colorado, as monies that are owed to Level 3 have not been paid. (*Id.* ¶ 18.)

**D.      Evidence Relevant to This Dispute is Located in Colorado**

31.      A number of witnesses who may be called to testify in this case are located in Colorado: they include, but are not limited to, Dave Mueller, Brad Heritage, Salvador Alvarez, Katherine Johnson, Chris Smith, Donna Hamilton, and the many Colorado-based Level 3 technicians and managers who worked on BeavEx trouble tickets during the performance of the Contract. (*Id.* ¶ 19.)

32.      Furthermore, all electronically-stored information in Level 3's possession that is relevant to this dispute is located in Colorado. (Ex. E., Declaration of Dave Dovala ("Dovala Decl.") ¶¶ 4-5.)

## ARGUMENT

## I.      BEAVEX IS SUBJECT TO SPECIFIC PERSONAL JURISDICTION IN COLORADO

To obtain personal jurisdiction over a defendant in a diversity action, the plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the Fourteenth Amendment's due process clause. *Pro Axess, Inc. v. Orlux Distrib., Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005). Because Colorado's long-arm statute extends jurisdiction to the fullest extent permitted by the Fourteenth Amendment, the Court need only address whether the exercise of jurisdiction is consistent with due process. *AST Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1057 (10th Cir. 2008).

Personal jurisdiction comes in two forms: general jurisdiction, and specific jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414, nn. 8, 9 (1984). In its Motion, BeavEx argues that the Court lacks both types of jurisdiction. However, Level 3 does not contend that the Court has general personal jurisdiction over BeavEx. Therefore, the Court

can disregard BeavEx's argument on that issue and the distinct line of cases supporting it, and instead focus on the applicable specific personal jurisdiction analysis.

Specific personal jurisdiction requires a two-step inquiry. *AST Sports Sci., Inc.*, 514 F.3d at 1057. First, the Court must determine whether the defendant has enough minimum contacts with the forum such that it "should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 297 (1980)). Second, if the defendant has sufficient contacts, the Court must consider whether the exercise of specific jurisdiction is reasonable in light of the circumstances of the case, *i.e.*, whether it offends "traditional notions of fair play and substantial justice." *Id.* at 1057.

While Level 3 bears the burden of proving jurisdiction, this burden is light at the preliminary stages of litigation. *Id.* at 1056. In making the jurisdictional determination, the Court must resolve all factual disputes in favor of Level 3. *Id.* at 1057.

Both aspects of specific jurisdiction are satisfied here.

### A. BeavEx Has Sufficient Minimum Contracts with Colorado to Support the Exercise of Specific Jurisdiction

The minimum-contacts analysis requires a holistic appraisal of the circumstances surrounding the defendant's contacts with the forum and the nature of the contractual relationship giving rise to the parties' dispute, including their "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *AST Sports*, 514 F.3d at 1058 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985)). A single contract with a resident of a forum resident generally is not, by itself, sufficient to confer specific personal jurisdiction; however, "with respect to interstate contractual obligations, . . . parties who reach out beyond one state and create <u>continuing</u>

relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities." *Pro Axess*, 428 F.3d at 1277 (quoting *Burger King*, 471 U.S. at 473) (emphasis added).

Here, Level 3 and BeavEx had precisely the type of continuous business relationship the Tenth Circuit and other courts have found to confer specific personal jurisdiction over a nonresident defendant. *See, e.g. AST Sports*, 514 F.3d at 1058-60; *Pro Axess*, 428 F.3d at 1277-79; *Yellow Transp., Inc. v. Apex Dig., Inc.*, No. 05-2463-JWL, 2006 WL 416224, at *5 (D. Kan. Feb. 22, 2006). Far from an isolated contract with no meaningful connection to Colorado, Level 3 and BeavEx's contractual obligations and course of dealing are defined by the following significant jurisdictional facts:

- BeavEx entered into the Contract with Level 3, which, as BeavEx knew and at all relevant times has known, has its principal place of business in Colorado (Facts ¶¶ 1-5);

- Pursuant to the Contract, BeavEx sought services from Level 3 for multiple three-year terms, and BeavEx "fully expected to have a long term relationship" (*Id.* ¶¶ 4, 6, 9);

- BeavEx specifically contracted with Level 3 to provide services at BeavEx's office location in Denver, Colorado for a three-year term (*Id.* ¶¶ 7-9, 16);

- BeavEx received a shipment at its Denver location from Level 3 containing equipment necessary for the services BeavEx contracted with Level 3 to provide (*Id.* ¶ 11);

- On at least two occasions, a BeavEx representative met with a Level 3-affiliated technician at BeavEx's Denver location to install the equipment necessary for Level 3's services (*Id.* ¶ 10, 12, 15);

- BeavEx requested and received training on Level 3's customer portal for service issues from a Level 3 employee whom BeavEx knew was based in Colorado (*Id.* ¶¶ 17-19);

- In the parties' course of dealing, BeavEx personnel regularly communicated with Level 3 personnel based in Colorado on various issues relating to the Contract and Level 3's services thereunder (*Id.* ¶¶ 20-22, 27-29);

- BeavEx sent payments required under the Contract to Level 3 in Colorado, and communicated with Colorado-based Level 3 personnel regarding billing and credit issues under the Contract (*Id.* ¶¶ 23-27); and

- BeavEx sent its termination notice to Level 3 in Colorado, and the harmful effects of BeavEx's wrongful termination and refusal to pay Early Termination Liability under the Contract has harmed Level 3 in Colorado (*Id.* ¶¶ 29-30).

Taken together, these circumstances establish that BeavEx knowingly entered into and maintained an ongoing, multi-year business relationship with Level 3, a Colorado company, and had repeated Colorado contacts. BeavEx partially performed the Contract in Colorado by sending payments here.[3] And "[b]y procuring . . . services from [Level 3], which operates its business in [Colorado], [BeavEx] purposefully availed itself of the privilege of conducting activities within the forum state." *Pro Axess*, 428 F.3d at 1277.[4]

BeavEx's attempt to avoid specific jurisdiction by asserting that its contacts with Colorado are trivial and irrelevant is unavailing. (Mot. at 8-9.) BeavEx's contacts have a clear

---

[3] *See Cont'l Am. Corp. v. Camera Controls Corp.*, 692 F.2d 1309, 1312 (10th Cir. 1982) (fact that payments under contract were received by plaintiff in Kansas was "circumstantial proof that the parties agreed some performance would be rendered in the forum state"); *Yellow Transp.*, 2006 WL 416224, at *4 (holding that making payments under contract to plaintiff's Kansas office constituted partial performance in Kansas).

[4] *See Creative Socio-Medics, Corp. v. City of Richmond*, 219 F. Supp. 2d 300, 306-09 (E.D.N.Y. 2002) (holding Virginia defendant subject to personal jurisdiction in New York where defendant solicited bid from New York-based plaintiff, maintained contacts with New York via telephone and mail before and after execution of contract, entered into ongoing contractual relationship, employed plaintiff to provide on-going services in New York for its benefit in Virginia, and forwarded payments to New York, even though defendant executed contract in Virginia and its personnel had little physical New York presence).

nexus to this litigation, as those contacts were made in furtherance of the ongoing contractual relationship (and resulting obligations) from which Level 3's cause of action arises. *See AST Sports*; 514 F.3d at 1059-60; *Pro Axess*, 428 F.3d at 1279. Moreover, the triggering event for this dispute—BeavEx's early termination of all Level 3 services without paying the contractually-required early termination fees—also bears a Colorado connection. BeavEx not only terminated Level 3's services at BeavEx's Denver location; it sent its termination notice to Level 3 in Colorado, as contractually required, and the early termination fees were to be paid in Colorado. (Facts ¶¶ 16, 30.) Together with the parties' ongoing business relationship, these contacts show that BeavEx "purposefully directed [its] activities at residents of the forum . . . and [that] the litigation result[ed] from alleged injuries that arise out of or relate to those activities." *Burger King*, 471 U.S. at 472 (internal quotation marks omitted); *see also Cont'l Am. Corp.*, 692 F.2d at 1314 (holding that the defendant "availed itself of the privilege of business contacts with Kansas offices" when it entered into contract requiring partial payment in Kansas and that "by ceasing to make partial payments, defendant should certainly have foreseen the possibility of being haled into court in Kansas").

BeavEx's reliance on the place of contract formation and the inclusion of a Georgia choice-of-law clause in the tw Terms is also misplaced. That the parties' agreements were negotiated and signed in Georgia does not negate the more salient fact that BeavEx knowingly and voluntarily engaged in a continuing business relationship with a Colorado-based entity. *Pro Axess*, 428 F.3d at 1277 (recognizing that defendant "purposefully availed itself of the privilege of conducting activities []in the forum state" by engaging in a continuous business relationship with an entity that operates its business in the forum); *Benton v. Cameco Corp.*, 375 F.3d 1070,

1077 (10th Cir. 2004) (same); *Yellow Transp.*, 2006 WL 416224, at *3 (holding that defendant's continuous business relationship with Kansas entity was sufficient for exercise of personal jurisdiction by Kansas court over a breach of contract action even though contract was negotiated elsewhere and called for provision of services in other states). As the Tenth Circuit has recognized, "it is the full scope of a defendant's behavior, not simply the place of contract formation, that determines whether a court may exercise specific personal jurisdiction over a non-resident defendant in a breach of contract action." *Pro Axess*, 428 F.3d at 1279 n.6 (rejecting defendant's "effort to pin down the place of contract formation" as "unpersuasive"). Similarly, the Georgia choice-of-law clause is only that—a choice-of-law provision. It is not an agreement to litigate in a particular forum and, thus, has "minimal jurisdictional implications." *Creative Socio-Medics*, 219 F. Supp. 2d at 307 (distinguishing forum-selection clauses from choice-of-law provisions and holding that Virginia choice-of-law provision did not negate propriety of jurisdiction in other forum).

The bottom line is that, contrary to BeavEx's assertion, this is not a case in which the defendant's only contacts with the forum are the type of random or fortuitous contacts that arise from the unilateral activity of another party. Rather, BeavEx voluntarily contracted with Level 3 to provide continuous services in Colorado and elsewhere over the course of several years, all the while knowing that Level 3 is a Colorado-based company. The parties' contractual arrangement contemplated partial performance in Colorado and, in furtherance of that arrangement, BeavEx repeatedly communicated with Level 3 personnel in Colorado. Thus, BeavEx has sufficient minimum contacts with Colorado to support the exercise of specific jurisdiction.

**B.     The Assertion of Specific Personal Jurisdiction over BeavEx Is Consistent with "Traditional Notions of Fair Play and Substantial Justice"**

Where, as here, the defendant has minimum contacts with the forum, the Court's exercise of specific personal jurisdiction comports with "traditional notions of fair play and substantial justice" when it is reasonable under the circumstance of the case. *See Pro Axess*, 428 F.3d at 1279. In making this determination, the Court must consider the following factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies." *Id.* at 1279-80. The analysis of minimum contacts and reasonableness are complementary, such that a strong showing of minimum contacts will compensate for a weak showing of reasonableness and vice-versa. *Id.* at 1280.

As demonstrated above, by engaging in a continuous business relationship with a Colorado-based entity, BeavEx has purposefully directed its activities at Colorado. Thus, "to defeat specific jurisdiction, [BeavEx] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.* BeavEx, however, makes no effort to show that the exercise of specific jurisdiction is unreasonable under the relevant factors.[5] Nor can it. As explained below, on balance, these factors favor the Court's exercise of specific jurisdiction over BeavEx.

---

[5] BeavEx does not address the reasonableness prong of the specific personal jurisdiction analysis in its Motion. Level 3 will seek permission to address in a sur-reply any new arguments BeavEx raises in its reply brief concerning the reasonableness of jurisdiction.

First, litigating in Colorado will not impose any undue burden on BeavEx. Courts have repeatedly recognized that modern technology has made it much easier to litigate in distant forums and, thus, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *Kuberski v. Cred X Debt Recovery, LLC*, No. 11-cv-03247-RPM-KLM, 2012 WL 2943726, at \*7 (D. Colo. July 2, 2012) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000)); *see also Pro Axess*, 428 F.3d at 1280 ("[M]odern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." (quoting *Burger King*, 471 U.S. at 474)). Here, BeavEx already has a corporate presence in Colorado (Facts ¶ 7) and, thus, there is no reason to believe that forcing BeavEx to litigate in this forum will be "gravely difficult and inconvenient." *Pro Axess*, 428 F.3d at 1280 (quoting *Burger King*, 471 U.S. at 478).

Second, Colorado has a strong interest in adjudicating this dispute. "[S]tates have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors." *Kuberski*, 2012 WL 2943726, at \*7 (quoting *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1096 (10th Cir. 1998)). Level 3 has its principal place of business in Colorado and the economic impact of BeavEx's breach is most acutely felt here. (Facts ¶¶ 3, 30.) Therefore, Colorado has an interest in providing Level 3 a forum for its suit against BeavEx. *Id.*

Third, while Level 3 may receive effective relief in another forum, that relief will not be as conveniently obtained if Level 3 cannot litigate in its chosen forum. *See Kuberski*, 2012 WL 2943726, at \*7 (recognizing that factor favors plaintiff when it would receive effective but less convenient relief in another forum).

Fourth, Colorado provides an equally efficient forum for the resolution of this dispute. In considering whether the forum provides the most efficient location for litigating the dispute, courts consider "the location of witnesses, where the wrong underlying the lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation." *Pro Axess*, 428 F.3d at 1281. In light of these considerations, this factor is mostly neutral. Although Georgia law governs the dispute, the relevant witnesses are scattered, with some in Georgia and others in Colorado or elsewhere, and conduct central to the underlying dispute occurred in both Georgia (BeavEx's decision-making as to termination) and Colorado (Level 3's contract support services and analysis concerning alleged service outages). (*See* Compl. ¶ 18.)

Fifth, the Court's exercise of jurisdiction does not implicate the substantive social policies of other states or foreign nations. This case does not concern residents of foreign nations, so there is no concern that the exercise of jurisdiction will infringe on the sovereignty of another nation. *Cf. Pro Axess*, 428 F.3d at 1281.

Accordingly, on balance these five factors do not weigh in BeavEx's favor, and it cannot make a "compelling case" that this Court's exercise of specific personal jurisdiction would be unreasonable or offend traditional notions of fair play and substantial justice. *Pro Axess*, 428 F.3d at 1281. Thus, BeavEx is subject to specific personal jurisdiction in Colorado, and its motion to dismiss for lack of personal jurisdiction should be denied.

## II.      VENUE IN THE DISTRICT OF COLORADO IS PROPER UNDER 28 U.S.C. § 1391(b)

BeavEx's argument that venue is improper under section 1391(b) is meritless. Under that section, a "civil action may be brought" in any judicial district in which (1) the defendant

16

"resides" or (2) "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(2). In this case, venue is proper under either provision.

Venue in Colorado is proper under section 1391(b)(1) because BeavEx "resides" in Colorado for purposes of venue. Section 1391 expressly provides that a corporation "shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2). As demonstrated above, BeavEx is subject to personal jurisdiction in Colorado with respect to Level 3's claims. Venue in the District of Colorado is therefore appropriate.

In addition, venue in Colorado may be based on section 1391(b)(2) because a "substantial part of the events or omissions giving rise to the claim" occurred in Colorado. In evaluating the propriety of venue under this section, courts look "not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim." *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38, 42 (1st Cir. 2001). Venue is proper upon a showing that the relevant acts or omissions "have a close nexus to the alleged claims." *Emp'rs Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010). Venue, therefore, "is not limited to the district [in which] the <u>most</u> substantial events or omissions" occurred, but may be appropriate in any district in which "a substantial part of the underlying events took place." *Id.* at 1165-66 (emphasis in original).

Here, as discussed above, a substantial part of the events underlying Level 3's claim took place (or were to take place) in Colorado. In particular, Level 3 performed services under the Contract in Colorado, BeavEx's early termination included cancellation of services Level 3 provided at BeavEx's Denver location, the early termination fees that are the subject of this suit

17

included fees related to services in Denver, and payment of those fees was to be made in

Colorado. (Facts ¶¶ 7-22, 28, 30.) These events bear a "close nexus" to Level 3's claims and are

sufficient to support venue in Colorado under section 1391(b)(2). *See, e.g.*, *Karl W. Schmidt &*

*Assocs., Inc. v. Action Envtl. Sols., LLC*, No. 14-cv-00907-RBJ, 2014 WL 6617095, at *3-4 (D.

Colo. Nov. 21, 2014) (holding venue in Colorado proper under § 1391(b)(2) when "much of the

plaintiff's performance under the contract" occurred in Colorado and plaintiff received payments

in Colorado); *DJRJ, LLC v. U-Swirl, Inc.*, No. 16-cv-21-GKF-FHM, 2016 WL 1629288, at *6-7

(N.D. Okla. Apr. 22, 2016) (finding venue in Oklahoma proper under § 1391(b)(2) when

contract contemplated partial performance in Oklahoma and alleged breach of refusing to pay

was directed to Oklahoma).

## III.   THIS COURT SHOULD NOT TRANSFER THIS CASE TO THE NORTHERN DISTRICT OF GEORGIA

As the party seeking a transfer of venue, BeavEx bears the burden of showing that the

"balance of factors 'strongly favors' a transfer of venue under § 1404(a)." *Emp'rs Mut. Cas. Co.*,

618 F.3d at 1167 n.13; *accord Nationwide Telecom Inc. v. Dollar Phone Corp.*, No. 16-cv-2495-

MSK-MJW, 2017 WL 4123938, at *4 (D. Colo. Sept. 18, 2017) (stating that the movant must

show that "the inconvenience of proceeding in Colorado outweighs the strong presumption that

[plaintiff's] choice of forum is appropriate"). The Court should deny BeavEx's request to

transfer this matter to the Northern District of Georgia because BeavEx fails to meet this

burden.[6]

---

[6] There is no dispute that this case could have been brought in the Northern District of Georgia; therefore, the Court's analysis need only concern whether transfer is appropriate in light of the relevant factors. *See Mobley v. Legal Helpers Debt Resolution, LLC*, No. 11-cv-02497-MSK-KMT, 2012 WL 123255, at *5-6 (D. Colo. Jan. 17, 2012).

This Court has repeatedly recognized that the plaintiff's choice of forum is afforded "significant deference" when the plaintiff is a forum resident and, thus, it "should not be lightly set aside." *Mobley*, 2012 WL 123255, at *6; *accord Emp'rs Mut. Cas. Co.*, 618 F.3d at 1167 (recognizing that "plaintiff's choice of forum should rarely be disturbed" (internal quotation marks omitted)); *Nationwide Telecom*, 2017 WL 4123938, at *5 (explaining that "significant weight . . . is given to [the plaintiff's] choice of forum"); *ProServe Corp v. STC-Marketing, LLC*, No. 06-CV-00097-MSK-CBS, 2006 WL 1517733, at *2 (D. Colo. May 31, 2006) ("Unless the balance of relevant factors weighs strongly in [favor of transfer], the Court should not disturb [the plaintiffs'] choice of forum."). Here, Level 3 is a Colorado-based entity that has chosen this forum. Accordingly, to overcome the presumption favoring Level 3's choice of forum, BeavEx must make a "strong showing of inconvenience." *See Nationwide Telecom*, 2017 WL 4123938, at *4 n.4 (stating that plaintiff's chosen forum "will only be disturbed based on a strong showing of inconvenience by the defendant"). It has not and cannot do so.

## A.    The Location of Witnesses and Other Evidence

BeavEx asserts that the second factor[7] "heavily" favors transfer because "[t]he vast majority of potential witnesses are located in Georgia." (Mot. at 12.) To demonstrate inconvenience, however, BeavEx "must (1) identify the witnesses and their locations; (2) indicate the quality or materiality of their testimony; and (3) show that any such witnesses were unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary." *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 (internal quotation marks and alterations omitted). BeavEx has not even attempted to meet this burden. It

---

[7] BeavEx argues that only three of the eight factors favor transfer, effectively conceding that the remaining factors are neutral and thus do not favor transfer. (*See* Mot. at 13.)

argues only that the parties' contracts were negotiated in Georgia and that BeavEx communicated with Level 3 representatives in Georgia about early termination liability. (Mot. at 12.) This assertion does not provide the specificity required by the Tenth Circuit; nor does BeavEx show that these witnesses—who are the parties' employees—cannot be made available for deposition or trial.[8] BeavEx's bare assertions are insufficient to justify transfer. *See Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 (assertion that "majority of potential witnesses are Utah residents" insufficient to justify transfer to Utah when defendant "neither identified those witnesses with specificity nor indicated the subject matter of their testimony").

Moreover, BeavEx wholly ignores the extent to which relevant witnesses and evidence are located in Colorado (or elsewhere). Many Level 3 witnesses are located in Colorado, and Level 3's records pertinent to this dispute are located here, as well. (Facts ¶¶ 31-32.) Given that relevant witnesses are located in both Colorado and Georgia (as well as other locations), BeavEx cannot show that the second factor weighs heavily in favor of transfer, even if it favors transfer at all. *Mobley*, 2012 WL 123255, at *6 ("Given the mixed showing as to whether evidence and witnesses would be more accessible in Illinois than Colorado, this factor does not weigh in favor of transferring the case.").

---

[8] BeavEx relies heavily on Judge Martinez's decision in *Aurora Commercial Corp. v. Lenox Fin. Mortg. Corp.*, No. 13-cv-0323-WJM-MJW, 2013 WL 5200231, at * 3-4 (D. Colo. Sept. 16, 2013), to support its argument for transfer. (Mot. at 11-13.) Notably, however, two of the key out-of-state witnesses identified by the defendant were third parties who were not otherwise connected to the plaintiff or defendant. *Aurora Commercial*, 2013 WL 5200231, at *4. BeavEx has made no showing that is the case here.

### B.     The Cost of Making the Necessary Proof

BeavEx's argument that the third factor favors transfer is similarly unavailing. BeavEx

merely asserts that litigating in Colorado will be more expensive because witnesses are located in

Georgia "the majority of the relevant information is located at BeavEx's offices in Atlanta."

(Mot. at 12.) As discussed above, however, key witnesses are also located in Colorado and, thus,

travel expenses would be incurred for these witnesses if the case is litigated in Georgia. Relevant

information—such as Level 3's records pertinent to this dispute, including records regarding

BeavEx's trouble tickets, and Level 3's analysis and response to them—is also located in

Colorado. (Facts ¶¶ 31-32.) In any event, BeavEx has not shown that the expense of producing

relevant information will be materially different if the case is litigated in Georgia instead of

Colorado. Indeed, the majority of this information is stored and will be produced electronically,

so its physical location is of little consequence. BeavEx, therefore, has not demonstrated that this

factor favors transfer. *Cf. Emp'rs Mut. Cas. Co.*, 618 F.3d at 1169 (finding that third factor did

not justify transfer when "the record contains no evidence concerning the potential costs of

litigating this case in Wyoming" versus the transferee forum of Utah).

### C.     The Advantage of Having a Georgia Federal Court Determine
###           Questions of Georgia Law

The parties agree that Georgia law applies to this action pursuant to the choice-of-law

provision in the Contract. However, while this slightly favors transfer to Georgia, it does not

justify disregarding Level 3's choice of forum, particularly when BeavEx has not shown—and

cannot show—that other factors strongly favor transfer. *See Mobley*, 2012 WL 123255, at * 7

(declining to transfer case to Illinois, despite the fact that Illinois law governed the parties'

contract dispute, when other factors did not strongly favor transfer). Furthermore, there is no

unique procedural or substantive aspect of Georgia law that this Court must apply; this is a breach of contract action based on the parties' Contract and course of dealing thereunder.

Accordingly, BeavEx has failed to meet its burden of showing that the balance of factors strongly favors transferring this matter to the Northern District of Georgia. The Court should, therefore, deny BeavEx's request to transfer venue.

## CONCLUSION

For the reasons stated above, BeavEx is properly subject to specific personal jurisdiction in Colorado, venue is proper here, and transfer is unwarranted. Level 3 respectfully requests that the Court deny BeavEx's Motion.

Dated:  December 13, 2017                         Respectfully submitted,


                                                  *s/ Kathryn A. Reilly*
                                                  Michael L. O'Donnell
                                                  Kathryn A. Reilly
                                                  Thomas A. Olsen
                                                  Wheeler Trigg O'Donnell LLP
                                                  370 Seventeenth Street, Suite 4500
                                                  Denver, CO  80202-5647
                                                  Telephone: 303.244.1800
                                                  Facsimile:  303.244.1879
                                                  Email:  odonnell@wtotrial.com
                                                          reilly@wtotrial.com
                                                          olsen@wtotrial.com

                                                  Attorneys for Level 3 Communications,
                                                  LLC and Level 3 Telecom Holdings, LLC

## **CERTIFICATE OF SERVICE (CM/ECF)**

I hereby certify that on December 13, 2017, I electronically filed the foregoing **LEVEL 3'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS UNDER RULES 12(b)(2) AND 12(b)(3) OR, ALTERNATIVELY, MOTION TO TRANSFER VENUE UNDER 28 U.S.C. § 1404(a)** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record:

- **Luke A. Connelly**
  lconnell@winston.com

- **Johanna Rae Hudgens**
  jhudgens@winston.com

*s/ Claudia Jones*