IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-02392-MSK-KLM

LEVEL 3 COMMUNICATIONS, LLC,

    Plaintiff,

v.

BEAVEX INCORPORATED,

    Defendant.

**OPINION AND ORDER DENYING MOTION TO DISMISS**

**THIS MATTER** comes before the Court on the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue Under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, in the Alternative, Motion to Transfer to the Northern District of Georgia Under 28 U.S.C. § 1404(a) **(#19)**, the Plaintiff's response **(#22)**, and the Defendant's reply **(#24)**.

**JURISDICTION**

The Court has subject-matter jurisdiction to hear this case under 28 U.S.C. § 1332(a). The parties dispute whether the Court can exercise personal jurisdiction over the Defendant.

**MATERIAL FACTS[1]**

The Court offers a brief summary of the facts here and elaborates as necessary in its analysis.

---

[1] The Court recounts and accepts as true the well-pled facts alleged in the Amended Complaint (**# 13**). *See Dudnikov v. Chalk & Vermilion Fine Arts Inc*., 514 F.3d 1063, 1069–70 (10th Cir. 2008). The parties have also submitted declarations and affidavits which provide additional facts.

1

The Plaintiffs, Level 3 Communications, LLC and Level 3 Telecom Holdings, LLC (collectively "Level 3"), are Delaware limited liability companies. On February 5, 2013, tw telecom holdings inc. ("tw"), a corporation headquartered in Colorado, entered into a contract ("tw contract") with the Defendant BeavEx Incorporated ("BeavEx"), a Connecticut corporation with its principal place of business in Georgia. Under the tw contract, tw agreed to provide telecommunication services to BeavEx. Level 3 Communications, LLC purchased tw and converted it into Level 3 Telecom Holdings, LLC.

During 2015 and 2016, Level 3 and BeavEx entered into additional agreements, which incorporated terms of the tw contract, for Level 3 to create and maintain secure private telecommunications network for BeavEx's operations at some of its 33 locations throughout the United States. As part of these agreements, Level 3 installed equipment and provided other telecommunications services at BeavEx's Denver, Colorado office. Level 3's invoices to BeavEx showed that Level 3 was located in Broomfield, Colorado and required BeavEx to send payments to a PO Box in Denver, Colorado. Over the course of their relationship, BeavEx sent multiple payments to the PO Box.

BeavEx was not satisfied with the Level 3 network. BeavEx and Level 3 convened a "Get Well" telephone conference, which included Level 3 representatives in Colorado, to address those issues. Unsatisfied, BeavEx sent a notice to Level 3's general counsel in Colorado to cancel all of Level 3's services. Level 3 alleges that BeavEx owes it $1,364,528.54 **(#13).**

## ANALYSIS

In the instant motion, BeavEx moves to dismiss **(# 19)** the claims against it for lack of personal jurisdiction and for improper venue. Alternatively, BeavEx requests that this action be transferred to the Northern District of Georgia.

### A. Whether the Court lacks personal jurisdiction over BeavEx

When the Court's jurisdiction over a defendant is challenged pursuant to Rule 12(b)(2), the plaintiff bears the burden of establishing that personal jurisdiction exists. *Soma Medical Intern. v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999); *Omi Holdings, Inc. v. Royal Ins. of Canada*, 149 F.3d 1086, 1091 (10th Cir. 1998). Courts may elect to resolve the jurisdictional question immediately, by conducting an evidentiary hearing on the issue, or they may defer resolution of the jurisdictional question until trial, requiring the plaintiff to make only a *prima facie* showing of jurisdiction at the pretrial phase. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). The Court may receive affidavits and other evidentiary material to assist in resolving the issue, but it must resolve any disputed facts in the light most favorable to the plaintiff. *Id.*

Normally, the jurisdictional inquiry comprises two components. The plaintiff must show: (i) whether the laws of the forum state confer jurisdiction by authorizing service upon the defendant; and (ii) whether the exercise of such jurisdiction comports with the principles of due process. *Niemi v. Lasshofer*, 770 F.3d 1331, 1348 (10th Cir. 2014). However, in Colorado, that inquiry is short-circuited, insofar as Colorado's Long-Arm Statute "confers the maximum jurisdiction permissible, consistent with the Due Process clause." *Id.* Thus, the inquiry simply becomes one of whether due process principles would be satisfied by the exercise of personal jurisdiction.

The due process inquiry also has two components. First, the Court must determine whether the Defendant has "such minimum contacts with the forum state that he should reasonably anticipate being haled into court there." *Id.* Second, the Court considers whether the

exercise of personal jurisdiction in the circumstances presented "offends traditional notions of fair play and substantial justice." *Id.* The "minimum contacts" analysis considers whether the defendant is susceptible to either "general jurisdiction" or "specific jurisdiction" in the forum state. *See American Fidelity Assur. Co. v. Bank of New York Mellon*, 810 F.3d 1234, 1237 (10th Cir. 2016). General jurisdiction resides in the location that the defendant is "at home" – generally, a corporation's state of incorporation and its principal place of business – and in certain "exceptional" cases, in other locations where the defendant's connections are similarly substantial. *BNSF Ry. Co. v. Tyrell*, 137 S.Ct. 1549, 1558 (2017). Specific jurisdiction is a more flexible concept, examining the nature and extent of the defendant's contacts with the forum and whether the legal claims in suit arise out of those contacts. *Bristol-Meyers Squibb Co. v. Superior Court of California*, 137 S.Ct. 1773, 1780 (2017). Specific jurisdiction arises when the defendant engages in "an activity or occurrence that takes place in the forum state," from which the claims at issue arise. *Id.* That activity must be purposefully directed by the defendant towards the state, rather than being random or fortuitous or the result of the actions of another, and the harmful effects of that conduct must typically be felt in the forum state. *Anzures v. Flagship Restaurant Group*, 819 F.3d 1277, 1280 (10th Cir. 2016).

The "fair play and substantial justice" analysis is a "fact-specific" inquiry on which the defendant bears the burden of proof. *ClearOne Communications, Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011). The defendant must present a "compelling case," showing considerations that "would render jurisdiction unreasonable." *Id.* Such considerations include: (i) the burden on the defendant of litigating in the forum, (ii) the forum state's interest in resolving the dispute, (iii) the plaintiff's interest in receiving convenient and effective relief, (iv) the judicial system's

interest in maintaining the most efficient resolution of controversies, and (v) the shared interest of the several states in furthering fundamental social policies. *Id.*

The parties agree that the Court lacks general jurisdiction over BeavEx. As to specific jurisdiction, BeavEx argues that Level 3's claims do not arise from conduct BeavEx has purposefully directed towards Colorado, but it does not argue that requiring it to litigate this matter in Colorado would offend traditional notions of fair play and substantial justice. Level 3 argues that BeavEx's ongoing business relationship with Level 3, a Colorado business, is sufficient to establish specific jurisdiction over BeavEx.

The Court agrees with Level 3, that is has specific jurisdicition over BeavEx due to its conduct in Colorado. Although having a contract with Level 3, a business headquartered in Colorado, is insufficient to establish specific jurisdiction over BeavEx, its negotiations, the terms of the subject contract, and the parties' course of dealing demonstrate purposeful activity by BeavEx in Colorado.

BeavEx's interactions with Level 3 began in 2013 with Level 3's predecessor in interest, tw, which was headquartered in Colorado. When Level 3 purchased tw, BeavEx indicated that it wanted to have a long-term relationship with Level 3, which is also headquartered in Colorado. Level 3 and BeavEx entered into multiple agreements for Level 3 to provide telecommunications services at BeavEx locations, including BeavEx's Denver, Colorado office, for three years. During the course of their relationship, BeavEx knew that Level 3 was headquartered in Colorado and communicated multiple times with Level 3 employees in Colorado by telephone, letter, and email. BeavEx's performance under the agreements between it and Level 3 – payment for Level 3's services – was due in Colorado, and Level 3 made at least partial payments by

interest in maintaining the most efficient resolution of controversies, and (v) the shared interest of the several states in furthering fundamental social policies. *Id.*

The parties agree that the Court lacks general jurisdiction over BeavEx. As to specific jurisdiction, BeavEx argues that Level 3's claims do not arise from conduct BeavEx has purposefully directed towards Colorado, but it does not argue that requiring it to litigate this matter in Colorado would offend traditional notions of fair play and substantial justice. Level 3 argues that BeavEx's ongoing business relationship with Level 3, a Colorado business, is sufficient to establish specific jurisdiction over BeavEx.

The Court agrees with Level 3, that is has specific jurisdicition over BeavEx due to its conduct in Colorado. Although having a contract with Level 3, a business headquartered in Colorado, is insufficient to establish specific jurisdiction over BeavEx, its negotiations, the terms of the subject contract, and the parties' course of dealing demonstrate purposeful activity by BeavEx in Colorado.

BeavEx's interactions with Level 3 began in 2013 with Level 3's predecessor in interest, tw, which was headquartered in Colorado. When Level 3 purchased tw, BeavEx indicated that it wanted to have a long-term relationship with Level 3, which is also headquartered in Colorado. Level 3 and BeavEx entered into multiple agreements for Level 3 to provide telecommunications services at BeavEx locations, including BeavEx's Denver, Colorado office, for three years. During the course of their relationship, BeavEx knew that Level 3 was headquartered in Colorado and communicated multiple times with Level 3 employees in Colorado by telephone, letter, and email. BeavEx's performance under the agreements between it and Level 3 – payment for Level 3's services – was due in Colorado, and Level 3 made at least partial payments by

mailing checks to Colorado PO Box. Finally, the alleged injury Level 3 suffered when BeavEx refused to pay what Level 3 alleges BeavEx owes has been felt by Level 3 in Colorado.

In light of these factors, BeavEx pursued a continuing relationship with Level 3 and has purposefully directed its actions toward the State of Colorado. Further, inasmuch as it is based on BeavEx's alleged failure to abide by the terms of a continuing contractual relationship with Level 3, Level 3's claim arises from those actions. Thus, all of the requisite elements of specific jurisdiction are present. Accordingly, the Court finds that Level 3 has made at least a *prima facie* showing that BeavEx is subject to specific jurisdiction in the State of Colorado.

Therefore, BeavEx's motion to dismiss for lack of personal jurisdiction is denied.

### B. Whether venue in this Court is improper

BeavEx makes an abbreviated argument that the claims against it should be dismissed under Rule 12(b)(3) due to improper venue. Level 3 argues that venue is proper because BeavEx is a resident of the State of Colorado for purposes of venue and a substantial part of the events giving rise to its claim occurred in Colorado.

28 U.S.C. § 1391(b) sets forth the appropriate venues for a given action. Section 1391(b)(1) provides that venue is appropriate in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located". For purposes of venue, a business entity is deemed a resident "in any judicial district in which such [entity] is subject to the court's personal jurisdiction with respect to the civil action in question". 28 U.S.C. § 1391(c)(2). As discussed above, BeavEx is subject to this Court's personal jurisdiction. Therefore, BeavEx is a Colorado resident for purposes of venue, and inasmuch as it is the only defendant in this matter, venue is proper in this Court.

Therefore, BeavEx's motion to dismiss for improper venue is denied.

**C. Whether this matter should be transferred under 28 U.S.C. § 1404(a).**

Alternatively, BeavEx requests that the Court transfer venue in this case to the Northern District of Georgia, where it is domiciled. BeavEx bears the burden of establishing the inconvenience of proceeding in Colorado outweighs the strong presumption that Level 3's choice of forum is appropriate. *See Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992). Ordinarily, the Court considers numerous factors, including: (1) the plaintiff's choice of forum[2]; (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; (3) the cost of making the necessary proof; (4) questions as to the enforceability of a judgment if one is obtained; (5) relative advantages and obstacles to a fair trial; (6) difficulties that may arise from congested dockets; (7) the possibility of the existence of questions arising in the area of conflict of laws; (8) the advantage of having a local court determine questions of local law; and (9) all other considerations of a practical nature that make a trial easy, expeditious and economical. *Chrysler Credit Corp. v. Country Chrysler Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).

BeavEx argues that the second, third, and eighth factors weigh in favor of transferring this matter to the Northern District of Georgia while the remaining factors are neutral. Level 3 argues that BeavEx has failed to meet its burden.

---

[2] The forum chosen by the plaintiff is given great weight, and will only be disturbed based on a strong showing of inconvenience by the defendant. *Scheidt v. Klein*, 956 F.2d at 965 (10th Cir. 1992). However, no such deference is afforded the plaintiff's choice when the chosen forum is one in which the defendant does business, but which otherwise has no connection to the case. *Cargill Inc. v. Prudential Ins. Co. of Am.*, 920 F. Supp. 144, 147 (D. Colo. 1996). In addressing the convenience of witnesses, the Court may consider whether remote witnesses have indicated a willingness to voluntarily appear to testify before this Court, and whether the trial testimony is capable of presentation by video deposition or videoconference. *See Longo v. Wal-Mart Stores Inc.*, 79 F. Supp. 2d 169, 172 (E.D.N.Y. 1999).

As to the second factor, BeavEx asserts that most of the key witnesses and evidence in this matter are located in Georgia. This is the most important factor in determining whether to transfer a case under section 1404(a), but to show inconvenience, BeavEx bears the burden to (1) identify witnesses and their locations, (2) state the quality or materiality of each witness' testimony, and (3) show that the witnesses are unwilling to come to trial, deposing them and using their deposition testimony at trial would be unsatisfactory, or using compulsory process to secure their attendance at trial would be necessary. *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1169 (10th Cir. 2010). BeavEx has made almost no effort to satisfy this burden. It does not identify any witnesses or discuss the materiality of their testimony in its original motion and makes only a perfunctory attempt to do so in its reply brief, and it did not address the third requirement in either. Thus, the Court cannot find that this factor weighs in favor of transfer.

As to the third factor, BeavEx argues that the key witnesses are located in Georgia, that "the majority of relevant information is located at BeavEx's offices in Atlanta", and it will cost more to litigate this case in Colorado than in Georgia. Yet it fails to provide any proof to support its arguments. Certainly, when entities in two different states wind up in court, one side will be inconvenienced in having to travel to the other side's forum, but BeavEx offers no meaningful justification as to why Level 3 should be the party to bear the inevitable travel costs instead of itself. In any event, the Court is confident that in this age of videoconferencing and electronic transmission of data, the incidental costs of interstate litigation can be effectively managed by both sides. Thus, this factor does not weigh in favor of transfer.

Finally, as to the eighth factor, BeavEx argues that Georgia courts should determine matters of Georgia law. While this factor may weigh in favor of transferring this case, BeavEx

8

does not identify any unique question of Georgia law that this Court will be required to resolve. Indeed, reviewing the Amended Complaint, this matter appears to be a typical breach of contract case that turns on questions of fact. Regardless, this would be the only factor weighing in favor of transferring this matter and, by itself, is insufficient to overcome the strong presumption that this Court is an appropriate forum for litigating this case.

Accordingly, the Court finds that BeavEx has failed to carry its burden of showing the appropriateness of a transfer of venue, and thus, its motion is denied.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue Under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3) or, in the Alternative, Motion to Transfer To the Northern District of Georgia Under 28 U.S.C. § 1404(a) **(#19)** is **DENIED**.

Dated this 25th day of January, 2018.

BY THE COURT:

Marcia S. Krieger
United States District Court